**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**At Wheeling**

**LACKAWANNA TRANSPORT COMPANY,**
**a West Virginia corporation,**

    *Plaintiff*,          **Civil Action No.** 5:16-cv-19  (Stamp)

 **v.**               Electronically filed:  February 22, 2016

**WILLIAM J. HUGHES, individually and as**
**Chairperson of the Wetzel County Solid Waste**
**Authority,**

    *Defendant*.

**COMPLAINT**

  The Plaintiff, Lackawanna Transport Company, a West Virginia corporation ["Plaintiff"], moves the Court for entry of judgment against Defendant, William J. Hughes, individually and as Chairperson of the Wetzel County Solid Waste Authority, ["Defendant"], and in support of its Complaint, states as follows:

**Nature of Action, Jurisdiction, and Venue**

  1.  This is a civil action under 42 U.S.C. § 1983 seeking declaratory relief, injunctive relief, and damages against Defendant for committing acts, under color of law, with the intention and for the purpose of depriving Plaintiff of rights secured under the Constitution and laws of the United States, by using Plaintiff's position as Chairperson of the Wetzel County Solid Waste Authority ["Authority"] to unlawfully, unilaterally, and without the Authority's authorization, to direct the filing of a petition to intervene, for his own personal reasons, but purportedly on behalf of the Authority, in proceedings before the Public Service Commission of West Virginia

["PSC"], to oppose Plaintiff's application for an amendment to its Certificate of Need filed by Plaintiff with the PSC for dedicated disposal cells for the disposal of Marcellus Shale drilling waste at Plaintiff's Wetzel County landfill.

2.      The case arises under the United States Constitution and 42 U.S.C. §§ 1983 and 1988, as amended.

3.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

4.      The declaratory relief sought is authorized under 28 U.S.C. §§ 2201 and 2202, and 42 U.S.C. § 1983.

5.      The injunctive relief sought is authorized under Fed. R. Civ. P. 57 and 42 U.S.C. § 1983.

6.      This Court is an appropriate venue pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2) because the Wetzel County Solid Waste Authority is located in this District; Plaintiff's landfill which is the subject of its PSC application for an amendment to its Certificate of Need is located in this District; Defendant resides in this District; and much of Defendant's actionable conduct occurred in this District.

## Parties

7.      Plaintiff is a West Virginia corporation which owns and operates a landfill, permitted by the Department of Environmental Protection of West Virginia ["DEP"], in Wetzel County, West Virginia.

8.      Defendant is a resident of Wetzel County, West Virginia, and during all relevant times was Chairperson of the Authority.

9.      Defendant is sued for damages in his individual capacity.

2

10.    Defendant is sued for declaratory relief and injunctive relief in his official capacity.

11.    At all times relevant, Defendant acted under color of law by misusing his power as Chairperson of the Authority possessed by virtue of state law and made possible only because he was clothed with the authority of state law to act unilaterally, unlawfully, and without the authorization to deprive Plaintiff of its rights secured under the Constitution and laws of the United States.

### Facts

12.    On June 6, 2013, pursuant to a February 21, 2013, memorandum issued by the DEP, Plaintiff filed an application with the PSC to amend its existing Certificate of Need to construct and operate dedicated disposal cells -- Cells 7 and 8 – for Marcellus Shale drilling waste.

13.    On July 11, 2013, the PSC's Staff filed a memorandum with the PSC recommending approval of Plaintiff's application.

14.    On July 22, 2013, Plaintiff filed its response with the PSC concurring in the Staff's memorandum.

15.    At that point, Plaintiff's application, like that of other West Virginia landfill operators filing similar applications pursuant to the February 21, 2013, memorandum issued by the DEP, would have been routinely granted by the PSC.

16.    On October 13, 2013, however, without the Authority's authorization and for purposes of furthering his own private political agenda and in retaliation for Plaintiff's previous exercise of its rights under federal and state law, Defendant sent a letter to the Attorney General of West Virginia stating, "In accordance with West Virginia Code §22C-4-9(a), ***the Wetzel***

3

***County Solid Waste Authority . . .  with respect to the above-referenced Public Service Commission (PSC) proceeding and other matters***, all involving the impact of Marcellus shale drilling operations on the solid waste infrastructure in Wetzel County, particularly the Wetzel County Landfill. . . . ***The Authority needs representation to aid it in determining whether to intervene*** . . . ." [Emphasis supplied]

17.     On October 22, 2013, the Attorney General approved Defendant's request, which was limited to rendering legal advice to the Authority regarding "whether to intervene," not to represent the Authority relative to any intervention.

18.     Between October 13, 2013, and November 6, 2013, and at no time thereafter, did the Authority ever vote to intervene in the proceedings involving Plaintiff's application to the PSC for an amendment to its Certificate of Need.

19.     Nevertheless, on November 6, 2013, at the sole direction of Defendant; without Authority approval; and for the advance of Defendant's own private political agenda and to retaliate for Plaintiff's previous exercise of its rights under federal and state law, a petition to intervene with the PSC was filed, purportedly on behalf of the Authority, opposing Plaintiff's application.

20.     The petition stated, "***Now comes the Wetzel County Solid Waste Authority*** (WCSWA), by its counsel . . . and moves . . . to intervene in the referenced proceeding . . . ." [Emphasis supplied]

21.     The petition further stated, "***[T]he WCSWA desires to participate in this proceedin***g and provide evidence . . . and thereby assist the Commission in its investigation of the proposal." [Emphasis supplied]

4

22.    On November 18, 2013, Plaintiff filed a response with the PSC in opposition to the petition to intervene purportedly filed on the Authority's behalf.

23.    On November 20, 2013, the PSC's Staff filed a response with the PSC in opposition to the petition to intervene purportedly filed on the Authority's behalf.

24.    On December 2, 2013, a reply was filed purportedly on behalf of the Authority to Plaintiff's and the PSC Staff's responses to the petition to intervene.

25.    In the reply, it is stated, "The Commission's standard for intervention, however, is far broader, particularly in cases involving solid waste authorities.  The Commission has allowed solid waste authorities to intervene simply to present the concerns of local citizens. . . . Wherefore, *__the Wetzel County Solid Waste Authority prays that this Commission permit it to intervene__* . . . ."  [Emphasis supplied]

26.    On May 15, 2014, the PSC granted the petition to intervene concluding, "*__As the local solid waste authority for Wetzel County, the WCSWA has a legal interest in the instant case__* and should be granted intervention."  [Emphasis supplied]

27.    Accordingly, from the face of the PSC's order, it is clear that intervention was granted only because the petition was purportedly filed on behalf of the Authority, which is the local solid waste authority for Wetzel County, West Virginia.

28.    Thereafter, attorneys, apparently at Defendant's direction, actively opposed Plaintiff's application for an amendment to its Certificate of Need, including serving discovery, filing motions, and appearing as the only opponent at a PSC hearing on Plaintiff's application conducted on February 5 and 6, 2015.

29.     On January 28, 2015, pursuant to PSC procedures, a document was filed with the PSC entitled, "Direct Testimony of William J. Hughes ***on Behalf of Wetzel County Solid Waste Authority***. [Emphasis supplied]

30.     In response to the question, "***Are you connected in any way with the Intervenor in this proceeding, the Wetzel County Solid Waste Authority***?," Defendant testified, "***Yes, I serve on the Board of the Authority and am currently the Chairman of the Board***." [Emphasis supplied]

31.     In response to the question, "***What is the basis for the Authority's intervention***?," Defendant testified, "***The Board's concern*** . . . ." [Emphasis supplied]

32.     In response to the question, "***Is it the Authority's view*** that Lackawanna Transport Company's application . . . is consistent with the Wetzel County Commercial Solid Waste Facility Siting Plan?," Defendant testified, "***The Authority has intervened in this case because we do not believe*** that the proposed dedicated cell, at the Wetzel County Landfill, is consistent with the Plan." [Emphasis supplied]

33.     In response to the question, "***Is it the Authority's view*** that the Board's reasoning for prohibiting Class A landfills apply [sic] equally to the Wetzel County Landfill's current situation, and remain [sic] justified?," Defendant testified, "Yes. . . . ." [Emphasis supplied]

34.     On February 3, 2015, pursuant to PSC procedures, an opening statement was filed by attorneys who stated, "***It is the position of the Wetzel County Solid Waste Authority*** that the application submitted by Lackawanna Transport Company was incomplete and is not consistent with the statutory requirements set forth in West Virginia Code §24-2-1c(b), and that the evidence in this proceeding will establish that the Commission must deny the application for the

certificate of need on at least three (3) of the six statutory findings set forth in West Virginia Code §24-2-1c(d)." [Emphasis supplied]

35.     At the hearing conducted before the PSC on February 5, 2015, lawyers identified themselves as appearing "***on behalf of the Wetzel County Solid Waste Authority***." [Emphasis supplied]

36.     Defendant testified at the PSC's hearing on Plaintiff's application on February 5, 2015, but his testimony demonstrates that his actions taken in opposition to Plaintiff's application were in furtherance of his private political agenda and to retaliate for Plaintiff's previous exercise of its rights under federal and state law, not as a representative of the Authority.

37.     Defendant admitted that he and one other person were the sole members of the Wetzel County Action Group which opposes the drilling which produces the waste that under West Virginia law, including but not limited to House Bill 107, which was enacted into law on March 14, 2014, during the pendency of Plaintiff's application, and codified at W. Va. Code §§ 22-15-8 and 22-15-11,  is permitted to be processed at Plaintiff's Wetzel County landfill and is the subject of Plaintiff's PSC application.

38.     Defendant admitted at the hearing that he had made many public appearances in multiple states opposing the drilling which produces the waste that under West Virginia law is permitted to be processed at Plaintiff's Wetzel County landfill and is the subject of Plaintiff's PSC application.

39.     Defendant admitted at the hearing that he was a paid staff member of the Fractracker Alliance and had published a number of articles, for which he was compensated,

opposing the drilling which produces the waste that under West Virginia law is permitted to be processed at Plaintiff's Wetzel County landfill and is the subject of Plaintiff's PSC application.

40.     Defendant admitted at the hearing that he had been paid by the Ohio Valley Environmental Coalition for work regarding the drilling which produces the waste that under West Virginia law is permitted to be processed at Plaintiff's Wetzel County landfill and is the subject of Plaintiff's PSC application.

41.     Defendant admitted publishing an article in which he wrote in the first person complaining about the drilling which produces the waste that under West Virginia law is permitted to be processed at Plaintiff's Wetzel County landfill and is the subject of Plaintiff's PSC application even though the information did not apply to him, but applied to other third-parties.

42.     Defendant admitted that in published articles regarding his efforts concerning the drilling which produces the waste that under West Virginia law is permitted to be processed at Plaintiff's Wetzel County landfill and is the subject of Plaintiff's PSC application he was referenced as "Chair of the Wetzel County Solid Waste Authority," but contended that he was acting solely in his private capacity and had "no control over how a reporter or some other person in the room might characterize my organizations that I'm involved with."

43.     Defendant testified, "So I rarely say that I'm the Chairman of the Wetzel County Solid Waste Authority unless I'm down there at the DEP or the legislature when, in fact, I am there to represent the Wetzel County Solid Waste Authority."

44.     On March 11, 2015, PSC Staff filed its initial brief in which it concluded, "Staff recommends that the Lackawanna Transport Company's application to construct a separate cell for the disposal of drilling waste be granted."

45.     On March 11, 2015, pursuant to PSC procedure, a document was filed with the PSC entitled, "Initial Brief *of Wetzel County Solid Waste Authority*." [Emphasis supplied]

46.     The brief, represented to being filed on behalf of the Authority, requested that Plaintiff's application for an amendment to its Certificate of Need be denied.

47.     On March 18, 2015, pursuant to PSC procedure, a document was filed with the PSC entitled, "Reply Brief *of Wetzel County Solid Waste Authority*." [Emphasis supplied]

48.     The reply brief concluded, "LTC's application should be denied."

49.     On or about January 9, 2016, Plaintiff learned that although the Authority had never voted to approve the filing of a petition to intervene with the PSC in order to oppose Plaintiff's application, Defendant unlawfully directed the petition to intervene to be filed.

50.     Indeed, no motion was ever made at any meeting of the Authority to intervene before the PSC to oppose Plaintiff's application.

51.     At its meeting on February 4, 2016, the issue of Defendant's unilateral actions in directing an attorney to file a petition to intervene was discussed by the Authority.

52.     When Defendant was asked by fellow Authority member, Mark Cochran, to explain how a petition to intervene was filed without the Authority's vote or approval, Defendant responded, "I'd have to read back" and "It will take some looking."

53.     When Defendant was asked at the meeting relative to Defendant's attorney, "He wasn't given any authorization to file anything without the approval," Defendant responded,

"I'd would have to check with him" as if Defendant's attorney could act without the Authority's approval and file a petition to intervene.

54.     Defendant stated at the meeting that, "If I had it to do over again.  I would do it over again" even though he acted unilaterally in directing the filing of the petition to intervene.

55.     Plaintiff has reviewed the Authority's minutes, however, and the Authority never voted to approve the filing of a petition to intervene before the PSC to oppose Plaintiff's application, either before or after the petition to intervene was filed.

56.     At its meeting conducted on February 4, 2016, the Authority voted to direct the attorneys hired by Defendant to "cease until further notice all activity, work, and effort on the Authority's behalf" relative to Plaintiff's PSC application.

57.     Even after the Authority voted to direct the attorneys to "cease until further notice all activity, work, and effort on the Authority's behalf" relative to Plaintiff's PSC application, one of the attorneys publicly stated, "There is a possibility this matter may be resolved in another forum" as if someone other than the Authority could decide whether to take official action on behalf of the Authority.

58.     Also, after the Authority voted to direct the attorneys to "cease until further notice all activity, work, and effort on the Authority's behalf" relative to Plaintiff's PSC application, Defendant publicly stated, "As to the authorization and due process, others will decide how the authorization occurred" as if someone other than the Authority could determine whether his unilateral actions were authorized by the Authority.

59.     The Authority never voted, either before or after a petition for intervention was filed with the PSC, to either intervene or to oppose Plaintiff's application for an amendment to its Certificate of Need.

60.     The filing and prosecution of documents purportedly on behalf of the Authority were solely directed by Defendant under color of law as a result of his position as Chairperson of the Authority for purposes of carrying out Defendant's private political agenda.

61.     The filing and prosecution of documents purportedly on behalf of the Authority were solely directed by Defendant under color of law as a result of his position as Chairperson of the Authority for purposes of retaliating against Plaintiff for the previous assertion of its rights under federal and state law in prior litigation before the PSC.

62.     The unlawful and ultra vires actions of Defendant, under color of law, have caused Plaintiff to suffer significant economic damages, including but not limited to attorney fees, litigation expenses, and other adverse financial impacts, which could be in excess of $1 million.

63.     The unlawful and ultra vires actions of Defendant, under color of law, have caused the Authority to incur damages, including but not limited to attorney fees and litigation expenses for activities never authorized by the Authority.

## Count I – Section 1983 – Violation of Due Process Rights

64.     The allegations in Paragraphs 1 through 63 of the Complaint are incorporated by reference as if re-alleged herein.

65.     Section 1983 provides, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction

thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ."

66.     The Fourteenth Amendment to the United States Constitution provides, "No state shall . . . deprive any person of life, liberty, or property, without due process of law . . . ."

67.     The Fifth Amendment to the United States Constitution provides, "No person shall . . . be deprived of life, liberty, or property, without due process of law."

68.     When a state or local public official, like Defendant, engages in conduct that has not been authorized or has engaged in forbidden conduct, the actions of the public official are ultra vires and the public official is personally liable to third-parties, like Plaintiff, who suffer damages a proximate result of the deprivation of their rights under federal law as a result of the public official's ultra vires actions.

69.     At all relevant times in this matter, Defendant acted under color of state law and subjected Plaintiff to the deprivation of its rights to due process under the Fifth and Fourteenth Amendments to the United States Constitution.

70.     Specifically, using his position as Chairperson of the Wetzel County Solid Waste Authority under state law, Defendant directed attorneys, without any vote by the Wetzel County Solid Waste Authority, and for the purposes of advancing his private political agenda and to retaliate against Plaintiff, to intervene in proceedings before the Public Service Commission of West Virginia, for purposes of opposing, objecting, and obstructing Plaintiff's application for an amendment to its Certificate of Need.

71.     Because the Wetzel County Solid Waste Authority never considered nor voted to approve intervention in proceedings before the Public Service Commission of West Virginia, for purposes of opposing, objecting, and obstructing Plaintiff's application for an amendment to its Certificate of Need, Defendant's actions were unlawful, ultra vires, and violated Plaintiff's rights under the United States Constitution and federal law.

72.     But for the unlawful and ultra vires actions of Defendant, the PSC would have routinely granted Plaintiff's application, as it has done for similarly-situated applicants, for the dedicated disposal cells, particularly where the Staff did not oppose but supported Plaintiff's application.

73.     Defendant's unlawful and ultra vires actions have excessively delayed approval of Plaintiff's application.

74.     Defendant's unlawful and ultra vires actions have resulted in Plaintiff's losing dedicated Cell 7 during the pendency of the PSC proceedings, causing Plaintiff to suffer significant financial damages.

75.     Defendant's unlawful and ultra vires actions have resulted in Plaintiff's losing business opportunities to secure and serve Marcellus Shale drilling waste customers, causing Plaintiff to suffer significant financial damages.

76.     Defendant's unlawful and ultra vires actions have resulted in Plaintiff's incurring attorney fees and litigation expenses of almost $100,000 that it would not have incurred in the absence of those unlawful and ultra vires actions.

77.     Upon information and belief, Defendant knowingly and intentionally engaged in his unlawful and ultra vires actions for the purpose of furthering his private political agenda and

retaliating against Defendant, including but not limited to depriving and/or delaying Plaintiff's constitutional, statutory, regulatory, and property rights under the United States Constitution, the West Virginia Constitution, and federal and state law.

78.     Upon information and belief, Defendant has knowingly and intentionally concealed his unlawful and ultra vires actions further resulting in depriving and/or delaying Plaintiff's constitutional, statutory, regulatory, and property rights under the United States Constitution, the West Virginia Constitution, and federal and state law.

79.     Defendant's knowing and intentional conduct, under color of law, to deprive Plaintiff of its rights under the United States Constitution and federal law, warrants the imposition of punitive damages.

### **Prayer for Relief**

WHEREFORE, Plaintiff, Lackawanna Transport Company, a West Virginia corporation, requests judgment against Defendant as follows:

A.     For appropriate declaratory relief regarding the unlawful and unconstitutional acts of Defendant.

B.     For appropriate compensatory damages, including but not limited to Plaintiff's economic damages, attorney fees, litigation expenses, and other costs associated with its defense of Defendant's unauthorized petition to intervene.

C.     For appropriate punitive damages.

D.     For appropriate injunctive relief against Defendant, including enjoining and permanently restraining past, present, and future unlawful and unconstitutional acts, and direction to Defendant to take such affirmative actions as are necessary to ensure that the effects

of his unlawful and unconstitutional acts are eliminated and do not continue to affect Plaintiff's and others' rights.

E.     For an award of reasonable attorney fees, litigation expenses, and court costs expended as to such Defendant pursuant to 42 U.S.C. § 1988.

F.     For such other and further relief to which Plaintiff may show itself justly entitled.

**PLAINTIFF REQUESTS TRIAL BY JURY ON ALL ISSUES SO TRIABLE**

**LACKAWANNA           TRANSPORT COMPANY, a West Virginia corporation**

**By Counsel**

_____/s/ Ancil G. Ramey_____
Ancil G. Ramey, Esq.
WV Bar No. 3013
Steptoe & Johnson PLLC
P.O. Box 2195
Huntington, WV 25722-2195
T. 304.526.8133
ancil.ramey@steptoe-johnson.com

15