IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


LACKAWANNA TRANSPORT COMPANY,
a West Virginia corporation,

      Plaintiff,

v.                                        Civil Action No. 5:16CV19
                                                           (STAMP)
WILLIAM J. HUGHES, individually
and as Chairperson of the Wetzel
County Solid Waste Authority,

      Defendant.


**MEMORANDUM OPINION AND ORDER
GRANTING DEFENDANT'S MOTION TO DISMISS**

This civil action deals with the business of waste disposal and the alleged actions of the Wetzel County Solid Waste Authority's Chairperson, William J. Hughes ("Hughes"). The plaintiff, Lackawanna Transport Company ("Lackawanna"), holds a certificate of need to operate a landfill in Wetzel County, West Virginia. It initiated administrative proceedings seeking an amendment to its certificate of need to allow it to store hydraulic fracturing (commonly known as "fracking" or "fracing") waste at its landfill. Hughes intervened in those proceedings on behalf of the Wetzel County Solid Waste Authority. Lackawanna alleges that the Authority did not authorize the intervention and that Hughes intervened to obstruct the proceeding and further his political agenda. Lackawanna filed this civil action under 42 U.S.C. § 1983, alleging that Hughes violated its due process rights under the Fourteenth Amendment by abusing his official authority and by

abusing the administrative process.  The core issue is whether a public official's abuse of administrative procedure constitutes a violation of due process.  This Court believes it does not.

## I.  Background

Lackawanna Transport Company owns and operates a landfill in Wetzel County, West Virginia.  It holds a certificate of need issued by the West Virginia Public Service Commission ("the Commission") to operate the landfill.  Lackawanna alleges that the West Virginia Department of Environmental Protection issued a memorandum providing that waste from hydraulic fracturing operations in the Marcellus Shale formation may be stored in West Virginia landfills pending approval of those landfills' petitions for amendments to their certificates of need allowing for storage of such waste.  In June 2013 and based on that memorandum, Lackawanna filed a petition with the Commission to amend its certificate of need to allow Lackawanna to store such waste at its landfill.  The Commission's staff then filed a memorandum recommending approval of the petition.

William Hughes is the Chairperson of the Wetzel County Solid Waste Authority ("the Authority").  Hughes was involved in anti-fracking organizations and had publically expressed his opposition to fracking.  After Lackawanna filed its petition, Hughes obtained counsel from the West Virginia Attorney General's Office in the Authority's name and filed a motion to intervene with the

Commission to oppose Lackawanna's petition. Lackawanna opposed the motion, but the Commission granted it. The parties then conducted extensive discovery and several years of proceedings. In March 2016, the Commission entered an order granting Lackawanna's petition and amending its certificate of need to allow for storage of fracking waste.[1] See Pub. Serv. Comm'n Order on the Application of Lackawanna Transport Company, dba Wetzel County Landfill, for a Certificate Amendment to Construct a Dedicated Drilling Waste Cell and On the Complaint by the Wetzel County Solid Waste Authority that Lackawanna Transport Company is Operating a Class "A" Solid Waste Facility Without the Proper Certificate of Need, Nos. 13-0832-SWF-CN, 14-0057-SWF-C (Mar. 18, 2016), available at http://www.psc.state.wv.us/scripts/WebDocket/ViewDocument.cfm?CaseActivityID=446823. In February 2016, and before the petition was granted, the Authority's Board of Directors determined that it never authorized Hughes to intervene on its behalf or to direct the Authority's counsel throughout the proceedings. The Board then directed its counsel to cease all activity regarding Lackawanna's petition. Lackawanna claims to have first discovered that Hughes acted without authority in January 2016.

---

[1]Although the Commission's order is a matter outside of the pleadings, this Court takes judicial notice of its contents under Federal Rule of Evidence 201. The parties do not dispute that the Commission granted Lackawanna's petition. Further, the Commission's order is accurately and readily determined as a matter of public record.

Lackawanna then filed this civil action under 42 U.S.C. § 1983 against Hughes individually and in his official capacity as Chairperson of the Authority, claiming that Hughes deprived Lackawanna of "its rights to due process under the Fifth and Fourteenth Amendments to the United States Constitution." ECF No. 1 at 12. Lackawanna alleges that Hughes intervened on the Authority's behalf without first obtaining authorization from the Authority's Board, that Hughes intervened to further his personal political agenda, and that he did not act to further a legitimate government interest. Lackawanna claims that, but for Hughes's intervention, the petition would have been "routinely" granted, and that Hughes maliciously delayed the proceedings, resulting in increased expenses in pursuing its petition, increased attorneys' fees, and economic losses. Lackawanna seeks declaratory relief, injunctive relief, judgment for compensatory damages, and punitive damages. Hughes then filed a motion to dismiss for failure to state a claim under Federal Rules of Civil Procedure 12(b)(1) and (6), arguing that this Court lacks subject matter jurisdiction, that this Court should abstain from exercising jurisdiction, that Lackawanna's claim is otherwise barred for various reasons, that Lackawanna fails to state a claim for a violation of its rights, and that Hughes is entitled to qualified immunity.

## II.  Applicable Law

A motion to dismiss for lack of subject matter jurisdiction under Federal Rules of Civil Procedure 12(b)(1) may challenge jurisdiction either facially or factually.  Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009); see also Lawrence v. Dunbar, 919 F.2d 1525, 1528-29 (11th Cir. 1990).  "When a defendant makes a facial challenge to subject matter jurisdiction, the plaintiff, in effect, is afforded the same procedural protections he would receive under a Rule 12(b)(6) [motion]."  Id. (internal quotation marks omitted).  "In that situation, the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction."  Id.

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  This plausibility standard requires a plaintiff to articulate facts that, when accepted as true, demonstrate that the plaintiff is plausibly entitled to relief.  Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (citing Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

III.  <u>Discussion</u>

Hughes offers a host of arguments in support of his motion to dismiss.  First, he argues that this Court lacks jurisdiction or should abstain from exercising jurisdiction.  Second, Hughes argues that Lackawanna's § 1983 claim is barred under the applicable statute of limitations, the doctrine of waiver, and under West Virginia state law.  Third, he argues that Lackawanna fails to state a claim that Hughes violated its due process rights under the Fifth or Fourteenth Amendments, and that Hughes is entitled to qualified immunity.

A.  <u>Jurisdiction</u>

Hughes argues that this Court lacks subject matter jurisdiction under Article III of the United States Constitution because Lackawanna fails to demonstrate standing and that this dispute is not ripe for judicial review.

1.  <u>Standing</u>

Article III of the United States Constitution limits federal courts' jurisdiction to actual "cases" and "controversies."  U.S. Const. art. III, § 2.  It is "an essential and unchanging part of the case-or-controversy requirement" that the party asserting federal jurisdiction establish standing.  <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560 (1992).  To establish standing, a party must show: "(1) that it has suffered an injury in fact that is both concrete and particularized and 'actual or imminent, not

conjectural or hypothetical'; (2) that there is a causal connection between the injury and the conduct complained of, i.e. the injury is 'fairly traceable' to the challenged action; and (3) that it is 'likely . . . that the injury will be redressed by a favorable decision.'" Star Sci. Inc. v. Beales, 278 F.3d 339, 358 (4th Cir. 2002) (quoting Lujan, 504 U.S. at 560-61). "The party invoking federal jurisdiction bears the burden of establishing these elements." Lujan, 504 U.S. at 561.

First, Lackawanna alleges an injury in fact. Lackawanna alleges that it has suffered an injury in the form of increased litigation costs, attorneys' fees, and economic damages due to Hughes's abuse of authority and of the administrative proceedings. These alleged injuries are certainly concrete and particularized and have actually been suffered. Second, Lackawanna demonstrates that its alleged injury is fairly traceable to Hughes's actions and "not . . . th[e] result [of] the independent action of some third party not before the court." Id. (alterations in original) (internal quotation marks omitted). Lackawanna alleges that, but for Hughes's intervention, the Commission would have "routinely" granted Lackawanna's unopposed petition. It further alleges that the increased costs, attorneys' fees, and economic losses directly resulted from Hughes's intervention, increasing the duration and stakes of the proceedings. Third, Lackawanna's alleged injury likely would be redressed by a favorable judgment. Lackawanna's

claimed injuries are the increased cost of pursuing its petition, increased attorneys' fees, and economic losses resulting from the delay. Lackawanna seeks declaratory relief, injunctive relief, and a judgment for compensatory and punitive damages. Because the Commission granted Lackawanna's petition, damages are not ongoing and injunctive relief would not be warranted. However, a judgment for compensatory damages would likely make Lackawanna whole.

Hughes argues that Lackawanna cannot demonstrate any of the standing elements because Lackawanna fails to allege a violation of its constitutional rights. He argues that he did not cause a deprivation of a cognizable property interest held by Lackawanna, that only the Commission could deprive Lackawanna of its asserted property interest in its certificate of need or the expected amendment, and that the Commission is the only proper defendant. However, these arguments go to the merits of Lackawanna's § 1983 claim rather than the broad standing inquiry. The issue of standing is whether a "case" or "controversy" exists, not whether the plaintiff's claim can withstand a motion to dismiss under Rule 12(b)(6). Regardless of the ultimate merit of Lackawanna's claim, Lackawanna satisfies Article III's threshold standing requirement.

2. Ripeness

Article III's case-or-controversy requirement also demands that the dispute be ripe. "The doctrine of ripeness prevents judicial consideration of issues until a controversy is presented

in 'clean-cut and concrete form.'" <u>Miller v. Brown</u>, 462 F.3d 312, 318-19 (4th Cir. 2006) (quoting <u>Rescue Army v. Mun. Ct. of L.A.</u>, 331 U.S. 549, 584 (1947)). The plaintiff bears the burden of proving ripeness. <u>Id.</u> at 319. In determining ripeness, courts must balance "the fitness of the issues for judicial decision with the hardship to the parties of withholding court consideration." <u>Id.</u> (internal quotation marks omitted). "A case is fit for judicial decision when the issues are purely legal and when the action in controversy is final and not dependent on future uncertainties." <u>Id.</u> Hardship is "measured by the immediacy of the threat and the burden imposed on the [plaintiff]." <u>Charter Fed. Sav. Bank v. Office of Thrift Supervision</u>, 976 F.2d 203, 208-09 (4th Cir. 1992). Courts must consider the cost to the parties of delaying judicial review. <u>Miller</u>, 462 F.3d at 319.

This civil action presents a purely legal issue; whether Hughes violated Lackawanna's constitutional rights. If Lackawanna's claims are valid, Lackawanna would endure substantial hardship if it was denied access to this Court for vindication of its constitutional rights. Further, dismissal would delay compensation for those injuries.

While Hughes argues that this case is not ripe because the Commission did not deny Lackawanna's petition, Lackawanna's claim does not depend upon the denial of its petition. However, Lackawanna claims Hughes violated its right to due process by

abusing his authority and the administrative process, not that his actions resulted in a denial of the petition. Accordingly, this matter is ripe for judicial consideration.

B.  Abstention

Hughes argues that this Court should abstain from exercising jurisdiction under Burford v. Sun Oil Co., 319 U.S. 315 (1943), and that this Court should refuse to exercise jurisdiction over Lackawanna's request for declaratory relief. Generally, federal courts have an "unflagging obligation to exercise their jurisdiction." Wash. Gas Light Co. v. Prince George's Cnty. Council, 711 F.3d 412, 418 (4th Cir. 2013) (internal quotation marks omitted) (quoting Deakins v. Monaghan, 484 U.S. 193, 203 (1988)). However, courts may abstain from exercising jurisdiction in certain limited, extraordinary circumstances. Hughes argues that this Court should abstain from exercising its jurisdiction under the doctrine set out in Burford v. Sun Oil, 319 U.S. 315 (2007), and that this Court should specifically abstain from exercising jurisdiction over Lackawanna's request for declaratory relief.

First, under Burford, courts may abstain from exercising equitable jurisdiction where "[f]ederal adjudication would 'unduly intrude' upon 'complex state administrative processes'" because either: (1) "there are difficult questions of state law whose importance transcends the result in the case then at bar"; or (2)

"federal review would disrupt state efforts to establish a coherent policy with respect to a matter of substantial public concern." Wash. Gas, 711 F.3d at 418 (internal quotation marks omitted). "Courts must balance the state and federal interests to determine whether the importance of difficult state law questions or the state interest in uniform regulation outweighs the federal interest in adjudicating the case." Martin v. Stewart, 499 F.3d 360, 364 (4th Cir. 2007) (emphasis in original). "[C]ases involving questions of state and local land use and zoning law are a classic example of situations where Burford should apply," but such cases "do not automatically warrant Burford abstention." Wash. Gas, 711 F.3d at 419 (internal quotation marks omitted). Under Burford, courts may abstain only from claims for declaratory or equitable relief, but may stay claims for damages. Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 730-31 (1996).

Burford abstention is not appropriate here. This case does not present difficult questions of state law. The only question is whether Hughes violated Lackawanna's constitutional rights while acting under color of state law. Despite Hughes's suggestion to the contrary, this case does not present any legal issues regarding local land use or zoning laws. Lackawanna alleges that Hughes abused his official position to maliciously obstruct a state administrative proceeding, not that the application of West Virginia land use laws or local zoning laws violates Lackawanna's

rights.  Lackawanna's claim does not depend upon the interpretation or application of state and local waste disposal laws and does not present any difficult questions of state law.

Further, federal review in this case would not disrupt any state effort to establish a coherent policy with respect to a matter of substantial public concern.  While disposal of fracking waste is a matter of substantial public concern, the state has already developed a coherent policy on that issue.  Entities may seek a certificate of need or an amendment to an existing certificate of need permitting them to store fracking waste in accordance with state environmental and waste disposal regulations. The Public Service Commission is tasked with considering petitions for such certificates of need.  The Commission has already determined that Lackawanna may store such waste in its landfill, and Lackawanna's claim does not require this Court to consider the merits of the Commission's order.  Thus, a determination in this case would not require this Court to consider the state's policy and would not disrupt it in any way.

Second, as to Lackawanna's request for declaratory judgment, courts have discretionary jurisdiction to "declare the rights and other legal relations of any interested party seeking such declaration."  28 U.S.C. § 2201(a); Centennial Life Ins. Co. v. Poston, 88 F.3d 255, 256 (4th Cir. 1996).  "[A] declaratory judgment action is appropriate when the judgment will serve a

useful purpose in clarifying and settling the legal relations in issue, and . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." Poston, 88 F.3d at 256 (internal quotation marks omitted). "[W]hen a related state proceeding is underway, a court considering a declaratory judgment action should specifically consider whether the controversy can better be settled in the proceeding pending in the state [forum]." Id. at 257 (internal quotation marks omitted). Courts must consider: (1) "the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state [fora]"; (2) "whether the issues raised in the federal action can more efficiently be resolved in the [forum] in which the state action is pending"; (3) "whether permitting the federal action to go forward would result in unnecessary 'entanglement' between the federal and state court systems, because of the presence of 'overlapping issues of fact or law'"; and (4) "whether the declaratory judgment action is being used merely as a device for 'procedural fencing' — that is, 'to provide another forum in a race for res judicata' or 'to achiev[e] a federal hearing in a case otherwise not removable.'" Id. (alteration in original).

Applying these factors here, this Court finds that exercise of declaratory judgment jurisdiction is appropriate. The proceedings before the Commission have concluded, thus, adjudication of

Lackawanna's claim would not interfere with those proceedings. Further, this civil action does not touch on the merits of Lackawanna's petition. The only issue is whether Hughes's actions violated Lackawanna's constitutional rights. Thus, the state has no interest in having this dispute resolved by the Commission. Resolving this dispute in a federal forum does not create entanglement with the state's judicial or administrative systems because there are no overlapping factual or legal issues involved. Finally, there is no indication of "procedural fencing." Accordingly, this Court will not abstain from exercising jurisdiction in this civil action.

C.   Bars to the Claim

Hughes also argues that Lackawanna's claim is barred by the applicable statute of limitations, that Lackawanna waived its right to bring this civil action, and that he is immune from liability under state law.

1.   Statute of Limitations

In § 1983 claims, the state's "general or residual statute [of limitations] for personal injury actions" applies. Owens v. Okure, 488 U.S. 235, 250 (1989). West Virginia's residual limitations period for personal injury actions is two years. W. Va. Code § 55-2-12(b). "[U]nder the 'discovery rule,' the statute of limitations is tolled until a claimant knows or by reasonable diligence should know of his claim." Roberts v. W. Va. Am. Water

Co., 655 S.E.2d 119, 125 (W. Va. 2007) (alteration in original) (internal quotation marks omitted).  Further, the plaintiff must know or should know "(1) that the plaintiff has been injured[;] (2) the identity of the entity who owed the plaintiff a duty to act with due care, and who may have engaged in conduct that breached that duty[;] and (3) that the conduct of that entity has a causal relation to the injury."  Id.

Hughes argues that the limitations period ran on November 6, 2015 because Hughes filed the motion to intervene on November 6, 2013.  However, the discovery rule tolled the limitations period to January 9, 2016, when Lackawanna claims it learned that Hughes acted without the Authority's approval to intervene.  Lackawanna's claim depends, not on the fact of Hughes's intervention, but on the fact that he intervened without authority and for the purpose of furthering his personal political agenda.  It appears that Lackawanna had no reason to know that Hughes intervened without authority until January 9, 2016.

Hughes argues that the discovery rule does not apply because Lackawanna could have investigated whether Hughes was authorized to intervene on the Authority's behalf, as the Authority's meetings were publicly held and its minutes were publicly available.  He argues that Lackawanna should have exercised "due diligence" and investigated the Authority's public records to determine whether the Authority's Board ever voted to authorize the intervention.

However, Hughes does not identify any facts Lackawanna knew that would make it reasonable for Lackawanna to conduct such an investigation. This is especially true where the Authority's Board did not officially find that Hughes acted without authority or take action to end his ultra vires actions until February 2016. Accordingly, the limitations period for Lackawanna's § 1983 claim was tolled until January 9, 2016 and the complaint is timely filed.

 2. <u>Waiver</u>

Hughes argues that Lackawanna waived its right to bring this civil action because Lackawanna failed to challenge in the proceedings before the Commission Hughes's authority to intervene. "[W]aiver is the voluntary and intentional relinquishment of a known right, and courts have been disinclined lightly to presume that valuable rights have been conceded in the absence of clear evidence to the contrary." <u>Doe v. Kidd</u>, 501 F.3d 348, 354 (4th Cir. 2007) (internal quotation marks omitted).

First, Lackawanna did not know Hughes acted without authority until January 2016 and filed its complaint a month later. Lackawanna could not have intended to waive its right to bring its § 1983 claim when it did not know the underlying facts until the administrative proceedings were all but concluded. Second, the Commission could not have adjudicated Lackawanna's § 1983 claim. Lackawanna does not challenge Hughes's intervention directly. Rather, Lackawanna alleges that Hughes's intervention constitutes

a violation of its constitutional rights, separate from the procedural issue of the propriety of his intervention in the administrative proceedings. While the Commission had jurisdiction to consider the procedural propriety of Hughes's intervention, it did not have jurisdiction to adjudicate an alleged violation of Lackawanna's constitutional rights. Lackawanna did not voluntarily and intentionally relinquish its right to seek compensation from Hughes for an alleged violation of its constitutional rights. Lackawanna could not have presented its § 1983 claim to the Commission and, thus, could not have waived its claim.

       3.   <u>State Law Immunity</u>

     Hughes argues that he is immune from liability in this civil action under the West Virginia Governmental Tort Claims and Insurance Reform Act, W. Va. Code §§ 29-12A-1 to 29-12A-18. However, the Act does not apply to "[c]ivil claims based upon alleged violations of the constitution or statutes of the United States." W. Va. Code § 29-12A-18(e). Further, the only immunities that apply under § 1983 are qualified immunity and absolute immunity applicable only to officials performing certain "special functions." <u>Buckley v. Fitzsimmons</u>, 509 U.S. 259, 268-69 (1993). Accordingly, official immunity under West Virginia law does not apply in this civil action.

D.  Lackawanna's § 1983 Claim

This Court will now address the merits of Lackawanna's claim. To state a claim under § 1983, a plaintiff must allege that the defendant "(1) deprived [the] plaintiff of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was performed under color of . . . state law." Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009). Although Lackawanna claims Hughes violated its due process rights under the Fifth and Fourteenth Amendments, this Court notes that because Hughes is a state official, the Fourteenth rather than the Fifth Amendment applies.  The Due Process Clause of the Fourteenth Amendment states that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, §1.   This provides both procedural and substantive protection against arbitrary deprivations of life, liberty, or property.

Lackawanna alleges that Hughes violated its due process rights by abusing his official authority to maliciously intervene in the administrative proceedings before the Commission.  Thus, Lackawanna invites this Court to expand the concept of substantive due process to include abuse of process claims against public officials. Because recognition of such a claim would constitutionalize wrongful conduct redressable under state tort law, this Court declines the invitation.

Lackawanna's claim is based upon substantive due process. The Supreme Court has "always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended. By extending constitutional protection to an asserted right or liberty interest, [the Court], to a great extent, place[s] the matter outside the arena of public debate and legislative action." Washington v. Glucksberg, 521 U.S. 702, 720 (1997) (internal quotation marks and citation omitted). Thus, the Court "exercise[s] the utmost care whenever [it is] asked to break new ground in this field, lest the liberty protected by the Due Process Clause be subtly transformed into the policy preferences of [the judiciary]." Id. (internal quotation marks and citation omitted).

To state a claim for a violation of substantive due process through official conduct, a plaintiff must show that: (1) the defendant deprived the plaintiff of life, liberty, or property; (2) the defendant acted under color of state law; and (3) the defendant's conduct was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." Hawkins v. Freeman, 195 F.3d 732, 738-39 (4th Cir. 1999) (quoting City of Sacramento v. Lewis, 523 U.S. 833, 847 n.8 (1998)) (internal quotation marks omitted). The question of whether the defendant's conduct "shock[s] the contemporary conscience" is a threshold issue. Id. at 738.

19

The "shocks-the-conscience test turns on the [defendant's] degree of fault." Waybright v. Frederick Cnty., Md., 528 F.3d 199, 205 (4th Cir. 2008). "[T]he general rule is that the action must have been 'intended to injure in some way unjustifiable by any government interest.'" Id. (quoting Lewis, 523 U.S. at 849). The defendant's action must be so "unjustified by any circumstance or governmental interest, as to be literally incapable of avoidance by any pre-deprivation procedural protections or of adequate rectification by any post-deprivation state remedies." Snider Int'l Corp. v. Town of Forest Heights, Md., 739 F.3d 140, 150 (4th Cir. 2014) (internal quotation marks omitted). "Rules of due process are not . . . subject to mechanical application in unfamiliar territory . . . . [Thus, the need to] preserv[e] the constitutional proportions of substantive due process demands an exact analysis of circumstances before any abuse of power is condemned as conscience shocking." Lewis, 523 U.S. 850.

Where state tort law offers post-deprivation procedure to remedy the alleged injury, "state tort law is the rule and due process the distinct exception. In other words, the Supreme Court has established a strong presumption that § 1983 due process claims [that] overlap state tort law should be rejected." Waybright, 528 F.3d at 205. The Supreme Court has emphasized that "the Fourteenth Amendment is not a font of tort law to be superimposed upon

whatever systems may already be administered by the States."
Lewis, 523 U.S. at 848 (internal quotation marks omitted).

Here, West Virginia tort law overlaps with Lackawanna's claim. West Virginia law recognizes a cause of action for abuse of process, and a plaintiff may recover damages for the additional time and cost expended in legal process by proving that the defendant "willful[ly] and intentional[ly] abuse[d] or misuse[d]" regularly issued process "for the accomplishment of some wrongful object" resulting in "unlawful injury" to the plaintiff. Williamson v. Harden, 585 S.E.2d 369, 372 (W. Va. 2003). Abuse of process is distinct from malicious prosecution in that malicious prosecution involves the "malicious[] causing [of] process to issue," while abuse of process involves malicious misuse of existing, lawful process. Id.

While the Supreme Court has looked to the common law tort of malicious prosecution in considering whether a false conviction violates the Fourth Amendment's protection against unreasonable seizures of one's person, the Court has not considered the misuse of process itself to be redressable. See Heck v. Humphrey, 512 U.S. 477, 486-87 (1994) (relying on the common law tort of malicious prosecution to hold that "to recover damages for allegedly unconstitutional conviction or imprisonment, . . . a § 1983 plaintiff must prove that the conviction or sentence has been . . . declared invalid" (footnote omitted)); Lambert v.

21

Williams, 223 F.3d 257, 261 (4th Cir. 2000) (concluding that a § 1983 claim for malicious prosecution is "properly understood as a Fourth Amendment claim for unreasonable seizure [that] incorporates certain elements of the common law tort"). Further, the Court has not embraced the common law torts of malicious prosecution or abuse of process as violations of substantive due process themselves. See Albright v. Oliver, 510 U.S. 266, 273-74 (1994) (concluding in a plurality decision that a § 1983 malicious prosecution claim is one for a violation of the Fourth Amendment rather than of substantive due process); Lambert, 223 F.3d at 260 (concluding that "malicious prosecution is not itself redressable under § 1983").

Accordingly, a claim for abuse of process is not itself redressable under § 1983. The tort could provide a useful analytical framework to determine whether a defendant deprived a plaintiff of protected life, liberty, or property interest. However, it would be the deprivation of that interest that would be redressable under the concept of substantive due process and not the abuse of process itself. Thus, unless Hughes's abuse of process deprived Lackawanna of a protected interest, Lackawanna's claim is not redressable under § 1983.

To that end, Lackawanna argues that it had property interests in the amendment it sought in its petition and in its original certificate of need. Lackawanna does not allege it was actually

22

deprived of these interests. Rather, Lackawanna alleges that Hughes's obstruction unduly delayed the issuance of the amendment and that this constitutes a deprivation of due process. However, as discussed above, the question is whether Hughes's abuse of process resulted in the deprivation of a protected life, liberty, or property interest.

Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577 (1972). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Id. This "claim of entitlement" standard also applies to land-use permits. Gardner v. City of Balt. Mayor & City Counsel, 969 F.2d 63, 68-69 (4th Cir. 1992). Thus, a person has a property interest in a land-use permit only if "the local agency lacks all discretion to deny issuance of the permit or to withhold its approval. Any significant discretion conferred upon the local agency defeats the claim of a property interest." Id. at 68 (emphasis in original). "Even if in a particular case, objective observers would estimate that the probability of issuance was extremely high, the opportunity of the local agency to deny issuance suffices to defeat the existence of

a federally protected property interest." <u>Id.</u> (internal quotation marks omitted).

First, Lackawanna suggests that it had a property interest in the amendment to the certificate of need because, but for Hughes's intervention, the amendment would have been "routinely granted." However, Lackawanna was not <u>entitled</u> to the amendment. Under West Virginia law, the Commission has discretion to grant or deny applications to obtain land-use permits. W. Va. Code § 24-2-1C. Even if the Commission "routinely" grants these petitions, that means only that the "probability of issuance was extremely high." <u>Gardner</u>, 969 F.2d at 68 (internal quotation marks omitted). The Commission still had "the opportunity . . . to deny issuance." <u>Id.</u> (internal quotation marks omitted). Thus, Lackawanna was not entitled to the amendment and it did not have a protected property interest in its expectation that the amendment would be granted. Further, Lackawanna's petition was ultimately granted. Therefore, Hughes's alleged abuse of process did not result in the deprivation of a property interest held by Lackawanna.

Nevertheless, Lackawanna relies on <u>Huron Valley Hospital, Inc. v. City of Pontiac</u>, 612 F. Supp. 654 (S.D. Mich. 1985), and <u>Ponds at North Hills v. Incorporated Village of North Hills</u>, 623 F. Supp. 688 (E.D.N.Y. 1985), to argue that an official's malicious abuse of process to prevent a person from obtaining a certificate of need is redressable under § 1983. However, those cases dealt with

obstruction of the issuance of a certificate of need to which the plaintiffs were already legally entitled. In Huron Valley Hospital, the defendants refused to issue a certificate of need after "Michigan courts determined that [the] plaintiff was entitled to a certificate of need and ordered that one be issued." Huron Valley Hosp., 612 F. Supp. at 661. Similarly, in Acorn Ponds, the plaintiff was entitled to issuance of certificates of occupancy for buildings the plaintiff constructed according to the specification of building permits that the defendant previously issued because "the representation implicit in issuing the building permits [was] that [certificates of occupancy] would be granted if the buildings were constructed in accordance with the plans upon which the building permits were issued." Acorn Ponds, 623 F. Supp. at 692. Unlike Huron Valley Hospital and Acorn Ponds, Lackawanna is sought a new benefit in its petition that is not mandated by a prior determination of entitlement by the nature of its original certificate of need. This Court has found no instance where an official was held liable under § 1983 for interfering with a plaintiff's attempt to obtain a new property interest.

Second, Lackawanna argues that its original certificate of need constitutes a protected property interest. While Lackawanna surely has a property interest in its original certificate of need, its enjoyment of that property interest was not in jeopardy in the administrative proceedings. Lackawanna's petition was for an

25

amendment to its certificate of need. Deprivation of its original certificate of need was simply not implicated, with or without Hughes's intervention. Thus, Hughes did not, and could not have, deprived Lackawanna of its original certificate of need through his abuse of process. Further, Lackawanna does not allege that Hughes's actions infringed its use or enjoyment of its original certificate of need.

Third, Lackawanna does not claim it was deprived of a protected liberty interest. To the extent that Lackawanna argues that it was deprived of some interest in procedural due process, Lackawanna fails to state a § 1983 claim based on a violation of procedural due process. Unlike substantive due process, "procedural due process simply ensures a fair process before the government may deprive a person of life, liberty, or property but 'does not require certain results.'" Sansotta v. Town of Nags Head, 724 F.3d 533, 540 (4th Cir. 2013) (citations omitted). "To succeed on a procedural due process claim, a plaintiff must satisfy three elements": (1) "that he had a constitutionally cognizable life, liberty, or property interest"; (2) "that the deprivation of that interest was caused by some form of state action"; and (3) "that the procedures employed were constitutionally inadequate." Id. (internal quotation marks omitted). As discussed above, Lackawanna was not deprived of a cognizable property interest. Even if Lackawanna were somehow deprived of a property interest,

Lackawanna was afforded constitutionally sufficient process through the proceedings before the Commission.  Thus, Lackawanna cannot state a claim for a violation of procedural due process.

Because Hughes did not deprive Lackawanna of a protected property or liberty interest, Lackawanna's claim is essentially for abuse of process under West Virginia law.  Any harm caused by Hughes is therefore redressable under state tort law, and this Court declines to expand substantive due process to such claims. Further, this Court does not feel the need to address Hughes's qualified immunity as this Court finds no constitutional violation. See Pearson v. Callahan, 555 U.S. 223, 232, 236-37 (2009) (concluding that qualified immunity does not apply if the defendant's "conduct violated a clearly established constitutional right" and that it the question need not be considered if the plaintiff fails to establish a constitutional violation).

## IV.  Conclusion

Hughes's alleged abuse of process does not rise to the level of a constitutional violation.  Lackawanna fails to state a claim under § 1983.[2]  Accordingly, Hughes's motion to dismiss (ECF No. 8) is GRANTED.  It is ORDERED that this civil action be DISMISSED and STRICKEN from the active docket of this Court.

---

[2]For this reason, dismissal is appropriate, although this Court has ruled above in favor of the plaintiff on the issues of standing, ripeness, abstention, statute of limitations, waiver, and state law immunity.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein. Pursuant to Federal Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment on this matter.

DATED:    October 31, 2016

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE